James K. **GENDEN and Alma Koppedraijer, individually and on behalf of all those similarly situated, Plaintiffs,**

v.

**MERRILL LYNCH, PIERCE, FENNER & SMITH, INC., Defendant.**

**No. 85 Civ. 7928 (WCC).**

United States District Court, S.D. New York.

Jan. 30, 1987.

As Amended Feb. 3, 1987.

---

Meites, Frackman & Mulder, Chicago, Ill., for plaintiffs; (Thomas Meites, of counsel).

Zavin, Sinnreich & Wasserman, New York City, for plaintiffs; (Richard Wasserman, of counsel).

Rogers & Wells, New York City, for defendant; (Richard A. Cirillo, John M. Quitmeyer, of counsel).

WILLIAM C. CONNER, District Judge:

Plaintiffs James K. Genden and Alma Koppedraijer ("the Gendens") brought this securities class action against Merrill, Lynch, Pierce, Fenner & Smith ("Merrill Lynch") alleging that defendant failed to disclose that mortgage subsidy bonds contained in Municipal Investment Trust Funds ("MITFs") marketed by defendants were subject to the possibility of special mandatory early redemption. Plaintiffs allege that defendant thereby violated its disclosure obligation under section 11(a) of the Securities Act of 1933 ("the '33 Act"), 15 U.S.C. § 77k(a) (1981), section 10(b) of the Securities and Exchange Act of 1934 ("the '34 Act"), 15 U.S.C. § 78j(b) (1981), and Securities and Exchange Commission rule 10b–5, 17 C.F.R. 240.10b–5 (1985), promulgated under section 10(b). Subject matter jurisdiction is predicated upon section 22 of the '33 Act, 15 U.S.C. § 77v (1981) and section 27 of the '34 Act, 15 U.S.C. § 78aa (1981).

This matter is now before the Court on plaintiff's motion for an order pursuant to Rule 23(c)(1) of the Federal Rules of Civil Procedure to redefine the class certified by Judge Susan Getzendanner in the Northern District of Illinois where this case was pending before being transferred here. For the reasons set forth below, plaintiff's motion is granted.

*Background*

Plaintiffs are husband and wife and reside in Illinois. On September 9, 1982, Genden purchased from Merrill Lynch five units in a MITF called the 244th Monthly Payment Series for $5,111.65. Genden's five units were part of an initial distribution of 75,000 units of the MITF containing approximately $75 million worth of 23 different issuers' tax-exempt municipal bonds of various kinds and amounts and bearing various coupon rates and maturities.

Among the bonds in the portfolio of the Genden's MITF, as in many other MITFs, are mortgage subsidy bonds, which are tax-exempt bonds issued by state and municipal authorities to raise money at tax-free rates for relending for home mortgages. Certain mortgage subsidy bonds were subject to a special mandatory redemption whereby any bond proceeds not used for the purchase of mortgage loans had to be used to redeem the bonds.

Plaintiffs originally filed this action in the Northern District of Illinois on November 17, 1983, alleging that the prospectus for the 244th series did not disclose the possibility that public housing bonds in the portfolio might be the subject of early redemption calls. A number of bonds in MITF portfolios brought to market in 1981 and 1982 had to be redeemed in 1983 and 1984 when, as plaintiff alleges, the issuing authorities were unable to use the bond proceeds to originate mortgage loans due to a substantial decline in interest rates in the home mortgage market. Plaintiffs also theorize that the stricter standards for relending under the Mortgage Subsidy Bond Act of 1980 made disposal of bond proceeds more difficult. Mortgage Subsidy Bond Act of 1980, Pub.L. No. 96–499, 94 Stat. 2660 (codified as amended at 26 U.S.C. §§ 103, 103A (1984)).

At a status conference before Judge Getzendanner on July 6, 1984, the judge certified the following class:

Original issue purchasers (other than defendant and those acting in concert with defendant) of units in MITF 244, provided that such purchasers owned their units at the time of the special early call of Housing Authority Bonds.

Judge Getzendanner invited plaintiffs to move for reconsideration after merits dis-

covery had been conducted. (Tr. 4, 7).[1] The case was then transferred to another judge within the Northern District of Illinois before being transferred here.

After the case was transferred here, plaintiffs sought permission to move for reconsideration and now seek to redefine the class as follows:

> All original purchasers other than defendant of units of Municipal Investment Trust Funds issued between November 17, 1981 and November 3, 1982 which contained mortgage subsidy bonds issued with the Mortgage Subsidy Bonds Act of 1980 and which experienced early redemptions.

### Discussion

■ For a suit to be certified as a class action, all four requirements of Rule 23(a) and at least one of the subsections of Rule 23(b) must be satisfied. *Green v. Wolf Corporation,* 406 F.2d 291, 298 (2d Cir. 1968), *cert. denied Wolf Corp. v. Green,* 395 U.S. 977, 89 S.Ct. 2131, 23 L.Ed.2d 766 (1969).

Rule 23(a) provides that a class may be certified only if: (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class. Additionally, Rule 23(b)(3) requires that plaintiffs show "that common questions of fact or law predominate as to all members of the class and that a class action is superior to alternative ways of conducting the litigation." *Id.* at 298.

■ Defendant does not contend that plaintiffs have failed to meet the numerosity requirement. Genden seeks to represent a class of purchasers in 48 MITFs. Defendant speculates that this larger class may include as many as 150,000 investors. The exact number and identity of class members, however, can be ascertained at a later date by examining Merrill Lynch records. In any case, plaintiffs have met the numerosity requirement.

### Common Questions

■ On a motion for class certification, an evidentiary hearing or a "mini-trial" on the merits of the complaint would be improper. *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 177, 94 S.Ct. 2140, 2152, 40 L.Ed.2d 732 (1974). It is necessary only that plaintiffs show, as a preliminary matter, some common question of law or fact. *Id.* As plaintiffs' lawsuit is founded primarily upon alleged securities fraud in violation of Rule 10b–5, the analysis should be conducted with reference to the elements of such a cause of action.[2]

Defendant contends that the issue of what should have been disclosed is not common to the class. Defendant argues that each MITF is nothing but the unique composition of its portfolio and, as such, the disclosure required for each depends upon its particular portfolio. Essentially, defendant argues that whether an average investor would attach importance to the alleged omission would differ depending on the mix of bonds in the fund. It also argues that since the prospectuses were issued over time, there is no uniformity in terms of what facts should have been disclosed over the period of the class. So, later purchasers like the Gendens would have a stronger case because Merrill

---

**1.** Transcript of the status conference before Judge Getzendanner regarding class certification on July 6, 1984. Defendant's Exhibit 3.

**2.** To prevail at trial, plaintiff must demonstrate the elements of a 10b–5 cause of action: (1) that defendant made a material misstatement or omitted to state a material fact in connection with the purchase or sale of securities; (2) defendant acted with the requisite scienter; (3) plaintiffs relied on such statements or omis-

sions; and (4) plaintiffs suffered damage as a result. *Fisher v. Plessey Co, Ltd.,* 103 F.R.D. 150, 155 (S.D.N.Y.1984). The requirement of proving reliance in 10b–5 class actions involving omissions was eliminated in *Affiliated Ute Citizens v. United States* 406 U.S. 128, 92 S.Ct. 1456, 31 L.Ed.2d 741 (1972) (obligation to disclose and withholding of material fact sufficient to establish causation in fact).

Lynch's ability to assess the actual probability of redemption would improve over time.

It is true that the prospectuses were issued over time as various MITFs came to market. It is also true that each MITF had its own unique portfolio. Defendant fails, however, to support its position that the prospectuses for funds experiencing early redemptions were necessarily different in any respect except the section describing the portfolio. A typical prospectus for a MITF includes a section entitled "Special Considerations" which catalogues the risk factors of all bonds contained in the fund. Redemption features such as "optional refunding redemption and/or sinking fund provisions" appear here so as to be highlighted as possible risks. Defendant's Exhibit 1. Defendant does not show, in response to plaintiffs' contention of similarity, that the disclosure in the "Special Considerations" section of the various MITF prospectuses was different.

Plaintiffs claim that, during the class period, no MITF prospectus contained language about the possibility of a special mandatory redemption, but that after the class period all contained such language without regard to the number of mortgage revenue bonds contained in the fund. Accordingly, the Court finds, as a preliminary matter and for purposes of certification, that plaintiffs have demonstrated common issues of fact and law concerning the what disclosure was required and the materiality of the alleged omissions.

Next, defendant contends that because each MITF contained a different portfolio the members of the proposed class have not alleged a common injury. Merrill Lynch argues that the loss of principal on an average initial purchase of 15 units (at a cost of slightly more than $15,000) could vary from nothing (some purchasers recognized a capital gain on the redemption where the bonds had been purchased below par) to a loss of as little as $.51 or as much as $148.13. Further defendant contends that plaintiffs' allegation of lost opportunity to continue to earn the same yield that had been generated by the redeemed bond is without legal basis and fails to show a class-wide injury.

Plaintiffs argue that they were injured by the early redemptions because the fall in the interest rates made the market value of the bonds higher than the par amount received. Plaintiffs have presented their claim of injury as loss of the difference between what the market value of the bond at the date of redemption would have been absent redemption and the par value received on the call.[3] Thus, plaintiffs' claim presents a common question as to whether the failure to disclose the susceptibility of the mortgage subsidy bonds to mandatory redemption constitutes a violation of the federal securities laws.

*Predominance of Common Questions*

Defendant contends that individual questions of materiality based on the number of housing bonds in the individual MITFs and the varying probability of an actual call predominate over common questions.

When determining whether common questions predominate courts "focus on the liability issue ... and if the liability issue is common to the class, common questions are held to predominate over individual questions." *Dura-Bilt Corp. v. Chase Manhattan Corp.*, 89 F.R.D. 87, 93 (S.D.N.Y.1981). The liability issue in this action will concern defendant's alleged duty to disclose and the materiality of the alleged omission. As discussed above, plaintiffs have shown these issues to be common to the class.

*Typicality*

The typicality prerequisite requires plaintiff to show that plaintiff's claim

---

**3.** Plaintiffs submit the affidavit of Thomas J. Livorsi, a consulting actuary employed by Peat, Marwick, Mitchell & Co., who has calculated the value of the bonds as of the redemption date using the yield for comparable bonds in the market. He used the Merrill Lynch Municipal Bond Index to get comparable weekly yields for tax exempt housing bonds as well as yields from comparable mortgage subsidy bonds purchased by Merrill Lynch for MITFs coming to market at or near the dates of redemption. Plaintiffs Attachment 12.

"arises from the same event or course of conduct that gives rise to claims of other class members and the claims are based on the same legal theory." *Dura-Bilt Corp. v. Chase Manhattan Corp., supra* at 99. This requirement seeks to ensure that by advancing their own interests, plaintiffs will advance the interest of the class. *Id.*

Defendant argues that the Gendens, as holders of the fund experiencing the most redemptions, have claims that are not typical of others in the class who experienced far fewer redemptions. Conflicts between class members in a securities fraud case is almost inevitable where a prolonged class period is involved. *See Steiner v. Equimark Corp.,* 96 F.R.D. 603, 609 (W.D.Pa. 1983). "The proper inquiry is whether other members of the class have the same or similar injury, whether the action is based on conduct not special or unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Dura-Bilt Corp. v. Chase Manhattan Corp., supra* at 99. All those who invested in MITFs holding mortgage revenue bonds conceivably have claims under the securities laws based on defendant's alleged omission. In this respect, the Genden's claims are quite typical. The same allegedly unlawful conduct affected the named plaintiffs and the class members, notwithstanding the possible variations of interest due to different funds or dates and amounts of redemptions. Such conflicts are not adequate grounds for denying class certification. *See Steiner v. Equimark Corp., supra* at 609.

*Adequate Representation*

▮ Defendant next argues that named plaintiffs and their counsel will not provide adequate representation. Defendant contends that named plaintiffs lack adequate financial resources to conduct this litigation. Defendant's contention is irrelevant since plaintiff has testified in a deposition that counsel is advancing costs. Plaintiffs' Attachment D. *See Kamens v. Horizon Corp.,* 81 F.R.D. 444, 446 (S.D.N.Y. 1979). Rule 23 requires only that there be no factors present which cast doubt on plaintiffs' ability to reimburse counsel, such as pending bankruptcy or financial distress. *Id.* Such doubts do not exist here and accordingly, there are insufficient grounds for doubting the adequacy of representation by the named plaintiffs.

Defendant does not deny that plaintiffs' counsel is capable of conducting the litigation as presently constituted but calls into question their ability in the event a much larger class is certified and if complicated issues of securities law are involved. Defendant, however, does not present the Court with any reason why it should not conclude that plaintiffs' counsel have met the requirements of Rule 23(a)(4) and are qualified, experienced and generally able to conduct the proposed litigation. I am confident that, as already demonstrated to date, counsel will proceed vigorously on behalf of all members of the class. Also, as plaintiffs indicate, counsel for plaintiffs are experienced in complex class securities litigation. *See e.g. Ridings v. Canadian Imperial Bank of Commerce Trust Co.,* 94 F.R.D. 147 (N.D.Ill.1982).

*Superiority*

A final hurdle to certification is the Court's inquiry into whether the class action device is superior to other available methods for a fair and efficient adjudication of the controversy. 3B J. Moore, J. Kennedy, Moore's Federal Practice ¶ 23.-45[3] (2d ed. 1985). It is well established that suits based on securities fraud typically give rise to the need for representative action. *See Green v. Wolf Corp., supra* at 301. The ultimate effectiveness of federal remedies may depend on the applicability of the class action device. *See* 3 Loss, Securities Regulation (2d ed 1961) 1819.

▮ In an action such as this one where the claims are numerous and relatively small, individual claimants are unlikely to take on the burden and cost of litigation. The superiority of the class action in such cases is beyond dispute. *Lewis v. Bogin,* 337 F.Supp. 331 (S.D.N.Y.1972). Further, the flexibility of the class mechanism allows the Court to at a later date, if necessary, to divide the class into subclasses or

limit the class action to certain issues. Rule 23(c)(4).

### Statute of Limitations

Defendant argues that the class cannot be enlarged as most, or many, putative members are now barred from bringing their claims by the applicable statute of limitations. Defendant contends that the statute of limitations period applicable to the claims of the class alleged in the complaint [4], and tolled the day the suit was filed, again began to run as to all claims not certified on July 6, 1984.

■ When an action is instituted on behalf of all members of a proposed class, and the court determines that the suit may be maintained as a class action, the statute of limitations is tolled as to the class when the suit is started. *See American Pipe and Construction Co. v. Utah*, 414 U.S. 538, 94 S.Ct. 756, 38 L.Ed.2d 713 (1974). The commencement of the action satisfies the limitation provision as to all those who might subsequently participate in the suit. *Id.* at 551, 94 S.Ct. at 765. This rule serves the principal purpose of efficiency and economy of litigation behind Rule 23 class actions. Further, it does not frustrate the purpose of limitations as the commencement of a class action suit puts the defendant on notice not only of the substantive claims against him but also of the number and generic identities of the potential plaintiffs who may participate in the judgment. *Id.* at 554–555, 94 S.Ct. at 766–767.

■ In the case at bar, there is another compelling reason why the statute of limitations must be tolled. It was the stated intention of the named plaintiffs to seek reconsideration of the initial certification ruling. Since Judge Getzendanner expressed willingness to reconsider after merits discovery had been conducted it is clear that the July 6, 1984 certification was conditional pursuant to Rule 23(c)(1). Rule 23(c)(1) provides, in pertinent part, that an

order under Rule 23 may be conditional, and may be altered or amended before the decision on the merits. Because the preliminary order certifying the initial class was conditional, the reasoning of *American Pipe* controls and requires that the statute of limitations as to the claims of the members not yet certified be tolled until an unconditional order is entered.

Plaintiffs' motion to reconsider must be considered timely in light of procedural delays for which plaintiffs cannot be held responsible, including defendant's motion to transfer the action here.

■ Finally, defendant's contention that law of the case governs here is wrong. In view of the specific provision for reconsideration embodied in Rule 23(c)(1), Judge Getzendanner's initial determination is not governed by law of the case and thus, upon transfer, a new judge is not precluded from reevaluating the certification in light of changed circumstances. *See e.g. Zenith Laboratories, Inc. v. Carter-Wallace, Inc.*, 530 F.2d 508, 512 (3d Cir.1976).

### Conclusion

For the reasons stated above, plaintiff's motion to reconsider is granted and the following class is certified:

All original purchasers (other than defendant and those acting in concert with defendant) of units of Municipal Investment Trust Funds issued between November 17, 1981 and November 3, 1982 which contained mortgage subsidy bonds issued with the Mortgage Subsidy Bonds Act of 1980, provided that such purchasers owned their units at the time of the special early call of Housing Authority Bonds.

Counsel are directed to appear at a pretrial conference on February 27, 1987 at 9:30 A.M., in Room 618, to discuss provisions for notice to the class members.

SO ORDERED.

---

4. All persons other than defendant and those in concert with it who purchased units in a Municipal Investment Trust Fund series on the initial public offering where the portfolio of underlying securities contains state, municipal and/or public housing authority bonds that have been or will be called for redemption pursuant to a special early call provision. Complaint ¶ 6.